# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>GUSTAVO GARCIA-GONZALEZ,<br><br>　　　　　　　　　　Defendant. | Case No. 12cr04471 BTM<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT** |

　　　　Defendant Gustavo Garcia-Gonzalez ("Defendant") moves to dismiss the Indictment against him on the ground that his prior removals were invalid. For the reasons discussed below, Defendant's motion to dismiss the Indictment is **DENIED**.

## I. BACKGROUND

　　　　On October 31, 2012, a federal grand jury in this district returned an Indictment charging Defendant with being a Removed Alien Found in the United States, in violation of 8 U.S.C. § 1326.

　　　　Defendant was born in the Republic of Mexico in 1982. Defendant's parents brought him to the United States in 1989. (Def. Decl. ¶ 3.) Defendant grew up in the United States with his siblings. Before he was 20 years old, Defendant had two children of his own, including a daughter with Down Syndrome, with a high school girlfriend. (Id. at ¶ 6.) Defendant and his girlfriend eventually split up, but Defendant continued to help raise and

support his children. (Id.)

In 2002, Defendant was convicted of several charges in the Superior Court of the State of California, Orange County. Defendant pled guilty to unlawful taking of a vehicle in violation of Cal. Veh. Code § 10851(a), evading a peace officer while driving recklessly in violation of Cal. Veh. Code § 2800.2, second degree burglary of a vehicle in violation of Cal. Penal Code §§ 459-460(b), and possession of cocaine in violation of Cal. Health & Safety Code § 11350(a). (Gov't Ex. 2.) Defendant was sentenced to 270 days in jail and three years of probation. (Id.)

On February 26, 2003, Defendant appeared before Immigration Judge Robert O. Vicars ("IJ"). Defendant was charged with being removable on the grounds that Defendant had entered the United States illegally and had been convicted of a crime involving moral turpitude. During the hearing, the IJ raised the issue of voluntary departure. (Tr. at 18.) The IJ explained that voluntary departure was the only relief that Defendant was eligible for. However, when the IJ was made aware that Defendant had pled guilty to possession of cocaine, the IJ told Defendant that his drug conviction was an aggravated felony, rendering him ineligible for voluntary departure. (Tr. at 20.) The IJ ordered Defendant removed to Mexico.

Prior to Defendant's removal, Defendant's father, a lawful permanent resident, had filed an I-130 Petition on behalf of Defendant. The Petition was processed by USCIS on August 21, 2001, and was given a priority date of April 30, 2001. In 2006, after Defendant's father had already become a United States citizen, the I-130 Petition was approved. (Def. Ex. at 11.) Defendant's priority date was reached in June 2007. See Visa Bulletin for June 2007, available at http://www.travel.state.gov/visa/bulletin/bulletin_3236.html.

On September 11, 2012, Defendant attempted to enter the United States through the San Ysidro Port of Entry. He presented a State of Washington Birth Certificate that belonged to someone else. (Gov't Ex. 1.) On September 11, 2012, Defendant was ordered to be removed from the United States via expedited removal, 8 U.S.C. § 1225(b).

//

## II. **DISCUSSION**

In his Motion to Dismiss Indictment, Defendant contends that his 2003 removal was invalid because the IJ erroneously informed him that he was ineligible for voluntary departure. Defendant also contends that his 2012 expedited removal was invalid because of various due process violations that deprived him of the ability to withdraw his application for admission. As discussed below, the Court finds that although there is an issue with respect to the validity of the 2003 removal, the 2012 removal was valid.

A. 1326(d) Collateral Attack

To sustain a collateral attack under 8 U.S.C. § 1326(d), a defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. United States v. Ubaldo-Figueroa, 364 F.3d 1047, 1048 (9th Cir. 2004). An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. Id. When the alleged defect in the deportation proceedings consists of the IJ's failure to inform the defendant regarding his possible eligibility for relief from deportation, in order to establish prejudice, the defendant must only show that he had a plausible ground for relief from deportation. United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1998).

An alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). However, the exhaustion requirement of 8 U.S.C. 1326(d) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001). "[A] waiver is not considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge fails to

advise the alien of this possibility and give him the opportunity to develop the issue." Id. at 1182 (internal quotation marks omitted).

B.  2003 Removal

Defendant contends that his 2003 removal was invalid because the IJ erroneously concluded that his state conviction for simple possession of cocaine constituted an aggravated felony that barred him from the relief of voluntary departure, 8 U.S.C. § 1229c(a).

At the time of the 2003 removal, it was unclear in the Ninth Circuit whether a state simple possession felony constituted a "drug trafficking crime," and thus qualified as an "aggravated felony," for immigration purposes. Although the Ninth Circuit had held that a state simple possession felony was an aggravated felony in the sentencing context, see United States v. Ibarra-Galindo, 206 F.3d 1337 (9th Cir. 2000), the Ninth Circuit had not decided whether such a felony was an aggravated felony for immigration purposes.

In response to disagreement among the circuit courts regarding when a state drug felony conviction constitutes a "drug trafficking crime," and whether differing interpretations can be adopted in the criminal and immigration contexts, the BIA issued the opinion In re Yanez-Garcia, 23 I&N Dec. 390 (BIA 2002). In Yanez-Garcia, the BIA held that the BIA would defer to the interpretation of "drug trafficking crime" given by the federal circuit courts of appeals that had spoken on the issue. Where there was no circuit precedent interpreting "drug trafficking crime" for immigration purposes, the BIA would adopt the circuit's rule for sentencing enhancement. Cazarez-Guttierez v. Ashcroft, 382 F.3d 905, 911 (9th Cir. 2004). In circuits where the relevant circuit court of appeals had not yet interpreted the phrase "drug trafficking crime," the BIA would apply the interpretation that had been adopted by the majority of the federal circuit courts – i.e., that a state simple possession felony qualified as a "drug trafficking crime."

In 2004, after Defendant's removal proceeding, the Ninth Circuit held that a state drug offense is not an aggravated felony for immigration purposes unless it is punishable as a felony under the Controlled Substances Act or other federal drug laws identified in the

definition of "drug trafficking crime," or is a crime involving a trafficking element. Cazarez-Guttierez, 382 F.3d at 919. A couple of years later, the Supreme Court also held that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." Lopez v. Gonzalez, 549 U.S. 47, 60 (2006).

The question before the Court is whether, given the state of the law in 2003, the IJ erred in concluding that Defendant's simple possession conviction was an aggravated felony and informing Defendant that he was ineligible for voluntary departure. In United States v. Vidal-Mendoza, 703 F.3d 1012 (9th Cir. 2012), an immigration judge told the defendant that he was ineligible for voluntary departure because, under the case law in existence at that time, his conviction for third-degree rape under Oregon law (sexual intercourse with another person under 16 years of age) constituted "sexual abuse of a minor" and an aggravated felony. Four years after his removal, the Ninth Circuit decided a case which adopted a different definition of "sexual abuse of a minor," which the defendant's conviction did not meet. When the defendant was indicted under 8 U.S.C. § 1326(a), the defendant moved to dismiss the indictment on the ground that his removal was invalid because the immigration judge failed to inform him of his eligibility for voluntary departure. The Ninth Circuit rejected this argument, explaining that immigration judges need not anticipate future changes in law when determining an alien's apparent eligibility for relief from removal. Id. at 1017.

Vidal-Mendoza can be distinguished from the instant case, however, because in Vidal-Mendoza, the post-removal precedent "created a new, previously unavailable, possibility of relief by making a deviation from longstanding Ninth Circuit and BIA precedent." Id. at 1018 (internal quotation marks and citation omitted). Due to the fact that the post-removal precedent was a clear "change in law," and the defendant became potentially eligible for relief only under this change in law, the Ninth Circuit held that the immigration judge correctly informed the defendant that he was ineligible for voluntary departure. See also United States v. Lopez-Velasquez, 629 F.3d 894 (9th Cir. 2010) (holding that immigration judge did not err in informing the defendant that he was ineligible for 212(c) relief

because under long-standing Ninth Circuit and BIA precedent, the defendant fell short of the seven-year domicile requirement).

In this case, there was no ruling by the Ninth Circuit on the issue at hand, and the only thing that was clear was that the law was unsettled. It cannot be said that Catarez-Gutierrez was a deviation from longstanding Ninth Circuit precedent or a clear change in law; the decision answered an open question in the circuit. An immigration judge's duty is "limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing." Lopez-Velasquez, 629 F.3d at 895. Here, it can be argued that taking into account the state of the law concerning when state drug convictions qualify as aggravated felonies in the immigration context, there was a reasonable possibility that the Ninth Circuit, when faced with the issue, would rule as it eventually did. Arguably, the IJ should have told Defendant that the Ninth Circuit had not yet ruled on the issue and that if the Ninth Circuit ruled in his favor, he would be eligible for voluntary departure. With this knowledge, Defendant could have made an informed decision about whether to appeal the IJ's ruling or waive his right to appeal.

However, the Court need not make a definitive ruling on the validity of the 2003 removal because, as discussed below, the 2012 expedited removal was valid.

C. 2012 Expedited Removal

Defendant contends that the 2012 expedited removal was invalid because the examining officer (1) failed to comply with 8 C.F.R. § 1235.3(b)(2)(i) (requiring that the alien sign the charging document, Form 1-860, and every page of his recorded statement on Form I-867AB); (2) mistakenly believed that Defendant had been convicted of an aggravated felony; (3) mistakenly thought that Defendant had no application for legal status pending; and (4) failed to advise Defendant of his eligibility to withdraw his application for admission.

The Court finds that there was no prejudice from the alleged due process violations identified by Defendant. Defendant argues that he was prejudiced because he otherwise had a good chance at being permitted to withdraw his application for admission. The Court

disagrees.

As explained in United States v. Barajas-Alvarado, 655 F.3d 1077, 1090 (9th Cir. 2011), the Inspector's Field Manual sets forth six factors an immigration officer should consider in evaluating an alien's request for permission to withdraw: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations. The manual also provides, "[a]n expedited removal order should ordinarily be issued, rather than permitting withdrawal, in situations *where there is obvious, deliberate fraud on the part of the applicant*." (Emphasis added.)

Defendant presented a false birth certificate to enter the country and therefore engaged in "obvious, deliberate fraud." Furthermore, the factors, on balance, do not weigh in favor of granting relief. Even absent a prior aggravated felony conviction, Defendant's immigration violation was serious because of the fraud, which evidenced an intent to violate the law. See Barajas-Alvarado, 655 F.3d at 1090. Defendant had previously been found inadmissible and removed, although, as already discussed, there is a question regarding the validity of that removal. For reasons discussed below, Defendant could not easily overcome the grounds of inadmissibility charged in the Form I-860. Defendant was not of an advanced age or in poor health. Although Defendant had family ties in the United States this factor is not listed in the Field Manual and carries "little weight." Barajas-Alvarado, 655 F.3d at 1091; United States v. Cisneros-Resendiz, 656 F.3d 1015, 1021 (9th Cir. 2011). The Court is not convinced that Defendant's contributions to the support and care of his daughter with Down Syndrome rise to the level of "humanitarian or public interest" considerations. It is unclear whether Defendant provided substantial support to his daughter and what effect his removal would have on her.

Defendant argues that he could overcome the grounds of inadmissibility, which were: (1) falsely representing himself as a citizen of the United States (Section 212(a)(6)(C)(ii)); and (2) applying for admission without valid entry documents (Section 212(a)(7)(A)(i)(I)).

With respect to the first charge, Defendant argues that the officer made a mistake because claiming birth in the United States, even falsely, is legally insufficient to constitute a false claim to United States citizenship. Smiley v. United States, 181 F.2d 505, 506-07 (9th Cir. 1950). However, in Valadez-Munoz v. Holder, 623 F.3d 1304 (9th Cir. 2010), the Ninth Circuit held that the BIA did not improperly determine that Valadez had falsely represented himself to be a citizen of the United States when he attempted to use a false Texas birth certificate and driver's license to reenter the United States. Although Defendant did not say that he was a citizen or admit that he had falsely claimed citizenship, the Ninth Circuit explained, "[W]e are almost asked to take a flight of fancy when we are asked to believe that Valadez was not asserting citizenship at that time." Id. at 1308. The Ninth Circuit distinguished Smiley, pointing out that Smiley told a police officer that he was born in New York, "but in circumstances where citizenship may well have been the farthest thing from his mind." The Ninth Circuit also distinguished criminal prosecution cases on the ground that in the immigration context, the alien has the burden of proving that he is not inadmissible "clearly and beyond doubt." Id. at 1309; 8 U.S.C. § 1229a(c)(2)(A).

As for the second charge, Defendant argues that his lack of proper documentation could have been resolved had Defendant's petition process been completed. However, it seems that Defendant was not eligible for adjustment of status. Upon receipt of an adjustment application, the Attorney General may adjust the status of the alien to that of permanent resident if "(A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (B) an immigrant visa is immediately available to the alien at the time the application is filed." 8 U.S.C.§ 1255(i).[1]

Even if, as it seems, a visa was immediately available to Defendant, Defendant was not admissible. Under 8 U.S.C. § 1182(a)(2)(A)(i)(II), an alien is inadmissible if he is convicted for a violation of state law relating to a controlled substance offense under the

---

[1] After amendments in 2000, adjustment of status became governed by 8 U.S.C. §1255(a). However, § 1255(i) continues to apply to "grandfathered" aliens who were the beneficiary of a petition for classification filed with the Attorney General on or before April 30 2001. Based on his priority date, the I-130 petition was filed on April 30, 2001.

federal Controlled Substances Act. Defendant was convicted of possession of cocaine in violation of Cal. Health & Safety Code § 11350(a). This conviction rendered Defendant inadmissible. See Garcia v. Holder, 2013 WL 22682 (9th Cir. Jan. 15, 2013) (holding that the BIA properly concluded that the alien was ineligible for adjustment of status because of his conviction for possession of cocaine in violation of Cal. Health & Safety Code § 11350(a)). Moreover, any alien who falsely represents himself to be a citizen of the United States is subject to a permanent bar to the alien's admissibility into the country. 8 U.S.C. § 1182(a)(6)(C)(iii); Pichardo v. INS, 216 F.3d 1198, 1201 (9th Cir. 2000).

Defendant has submitted documents showing that an individual named Jose Garcia-Gonzalez, was allowed by an Immigration Officer to withdraw his application even though he was convicted for making a false statement to a federal officer in violation of 18 U.S.C. § 1001, had previously been removed, and had convictions for vehicle theft and for being a felon in possession of a loaded firearm. Defendant argues that these documents show that it was plausible that he would be granted a withdrawal of his application.

The Court disagrees. These documents do not reveal the reasoning behind the granting of the withdrawal of application, and it is unclear whether the officer even considered the factors set forth in the Field Manual. See Barajas-Alvarado, 655 F.3d at 1091 n. 17 (explaining that two other cases in which an alien who presented false documents was granted withdrawal did not establish that it was plausible that Barajas-Alvarado also would have been granted relief, because the two cases involved aliens in different factual circumstances, and the courts in those cases did not explain why the aliens were granted relief). The instant case is, however, similar to that of Cisneros-Resendiz, where the Ninth Circuit held that it was not plausible that the IJ would have granted Cisneros permission to withdraw his application for admission. Id. at 1023. The Ninth Circuit pointed out that Cisneros's false claim of citizenship and conviction for a drug offense (possession of methamphetamine) would have weighed against granting his request for withdrawal and that his age and family ties to the United States did not count because they were not factors directly relating to the issue of admissibility. Id.

In sum, any due process violations in connection with the expedited removal proceedings did not result in any prejudice to Defendant. Defendant has not made a plausible showing that absent the alleged violations, the immigration officer would have permitted him to withdraw his application for admission.

### III. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss Indictment is **DENIED**. Although the validity of the 2003 removal is questionable, the 2012 expedited removal was valid.

**IT IS SO ORDERED.**

DATED: April 12, 2013

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court